UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PREBEN V. JENSEN and MARY J. JENSEN, | § § § | No. SA:13-CV-1095-DAE |
| Plaintiffs, | § § § | |
| vs. | § § | |
| JUDY ROLLINGER and RICK KNIGHT, UNITED STATES COAST GUARD, and ADMIRAL ROBERT J. PAPP, in his official capacity as Commandant of the United States Coast Guard | § § § § § § | |
| Defendants. | § § § | |
| _____ | § | |

ORDER DENYING UNITED STATES COAST GUARD'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND AMENDED
APPLICATION FOR PRELIMINARY INJUNCTION

On June 24, 2014, the Court heard oral argument on the Motion to

Dismiss Plaintiffs' Second Amended Complaint and Amended Application for

Preliminary Injunction (Dkt. # 30) filed by Defendant the United States Coast

Guard (the "Coast Guard"). Michael Kerns, Esq., appeared on behalf of the Coast

Guard, and Todd Lochner, Esq., appeared on behalf of Plaintiffs Preben V. Jensen

and Mary J. Jensen (the "Jensens"). After careful consideration of the memoranda

in support of and in opposition to the Motion, and in light of the parties' arguments

presented at the hearing, the Court, for the reasons that follow, **DENIES** the Coast Guard's Motion.

BACKGROUND

I.    <u>Factual Background</u>

This suit arises from the sale of the sailing vessel, "Chasing Sunsets." On July 19, 2012 the Jensens entered into a vessel mortgage agreement (the "Mortgage Agreement") with the Judy Rollinger and Rick Knight (the "Borrowers") to provide financing for the Chasing Sunsets, a Trans Pac 49 sailing vessel (the "Vessel"), in the amount of $100,800.00. ("SAC," Dkt. # 22 ¶ 12.) The Vessel was sold by the Jensens to the Borrowers, who are currently in possession of the vessel. (<u>Id.</u>)

Pursuant to the Mortgage Agreement, the Borrowers agreed to pay monthly installments in the amount of $4,200.00 to the Jensens until the principal sum was paid in full. (<u>Id.</u> ¶ 13.) The first monthly installment was due January 5, 2013. (<u>Id.</u>)

On March 25, 2013, after the Borrowers made two monthly installment payments, the Jensens received a Stop Payment Notice from the Borrowers' bank, informing the Jensens that the Borrowers had cancelled the monthly fund transfer between the parties' bank accounts. (<u>Id.</u> ¶ 14.) On April 18, 2013, the Jensens gave notice to the Borrowers that they had failed to pay the

2

monthly installment payments for the past two months.  (Id. ¶ 15.)  The balance

remaining pursuant to the Mortgage Agreement is $96,000, which remains

outstanding.  (Id. ¶ 16.)

Upon the Jensens' information and belief, the Borrowers currently

live on the Vessel in Panama with the intent to remain there indefinitely, evading

enforcement of the Mortgage Agreement.  (Id. ¶ 17.)

On November 27, 2013, the Jensens filed the Mortgage Agreement

with the United States Coast Guard National Vessel Documentation Center

("NVDC") for recording as a Preferred Ship Mortgage. (Id. ¶ 18.)  The status of a

Preferred Ship Mortgage creates a maritime lien on the vessel.

On December 17, 2013, the NVDC denied the Jensens' application,

informing them that the Mortgage Agreement was not eligible for filing or

recording as a Preferred Ship Mortgage.  (Id. ¶ 20.)  The Jensens appealed the

NVDC's decision to the NVDC Director.  (Id. ¶ 21.)  The Director responded on

January 10, 2014, affirming the decision of the NVDC.  (Id. ¶ 22.)  On January 14,

2014, Plaintiffs appealed the NVDC's decision to the Commandant of the United

States Coast Guard, asserting that Mortgage Agreement was filed in substantial

compliance with the Ship Mortgage Act requirements and, thus, is eligible for

recording as a Preferred Ship Mortgage.  (Id. ¶ 23.)   On March 10, 2014, the

Commandant of the Coast Guard issued a decision on the Jensen's appeal,

3

concluding that the NVDC properly rejected the Jensens' instrument filing application.  (Dkt. # 30, Ex. 1.)

II.   <u>Procedural Background</u>

The Jensens filed their original Verified Complaint on December 4, 2013, asserting a breach of contract claim against the Borrowers and requesting the Court issue of a writ of maritime attachment and garnishment of the Borrowers' assets.  (Dkt. # 1.)  This Court granted the Jensens request for writ of maritime attachment on December 10, 2013, concluding the Borrowers' assets were subject to attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.  (Dkt. # 3.)

On February 5, 2014, Plaintiffs filed an Amended Complaint (Dkt. # 8) and an Application for Preliminary Injunction (Dkt. # 10).  The Amended Complaint added as Defendants the United States Coast Guard and Admiral Robert J. Papp, Jr., in his official capacity as Commandant of the Coast Guard.  (Dkt. # 8.) The Amended Complaint asserted a Declaratory Judgment action, seeking a declaration that the Jensens are entitled to a Preferred Ship Mortgage on the Vessel.  (<u>Id.</u> ¶ 38.)  Specifically, the Jensens requested that this Court decide (<u>before</u> the decision of the appeal to the Commandant) whether the Jensens' filing of the Mortgage Agreement with the NVDC created, as a matter of law, a Preferred Ship Mortgage.  (<u>Id.</u> ¶ 39.)

4

In their Application for Preliminary Injunction filed on the same day as their Amended Complaint, Plaintiffs asked that this Court issue a preliminary injunction directing the Coast Guard to restore their Preferred Ship Mortgage application to its status as of December 10, 2013, which is the date Plaintiffs filed their original Verified Complaint in this Court.  (Dkt. # 10.)  Plaintiffs' Application further requested that the preliminary injunction stay in effect pending final resolution of the Declaratory Judgment action included in their Amended Complaint.  (Dkt. # 10 at ¶ 1.)  This Court set a hearing on Plaintiffs' Application for Preliminary Injunction for March 31, 2014.  (Dkt. # 15.)

Approximately one week before the scheduled hearing, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint and Amended Application for Preliminary Injunction.  (Dkt. # 24.)   The Court granted Plaintiffs' Motion to Amend Complaint, ordering the Clerk to file and docket Plaintiffs' Second Amended Complaint and Amended Application for Preliminary Injunction. (See Dkt. ## 21, 22.)

On May 8, 2014, the Coast Guard filed the Motion to Dismiss Plaintiffs' Second Amended Complaint and Amended Application for Preliminary Injunction that is now before the Court.  (Dkt. # 30.)  On May 28, 2014, Plaintiffs filed a Response.  (Dkt. # 31.)  On June 4, 2014, the Coast Guard filed a Reply. (Dkt. # 32.)

## STANDARD OF REVIEW

I.   Motion to Dismiss For Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 142 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing subject matter jurisdiction rests with the party seeking to invoke it. Hartford Ins. Grp. V. Lou-Con, Inc., 293 F.3d 908, 910 (5th Cir. 2002). Once a defendant files a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the burden rests on the plaintiff to establish that the court does indeed have subject matter jurisdiction to hear the case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

If the Court lacks jurisdiction to hear the case, then it also lacks jurisdiction to issue a preliminary injunction. See Rothe Dev., Inc. v. U.S. Dept. of Defense, No. SA-10-CV-743, 2010 WL 4595824, at *1 (W.D. Tex. Nov. 3, 2010) (citing Labat-Anderson, Inc. v. United States, 346 F. Supp. 2d 145, 155 (D.D.C. 2004)). An application for a preliminary injunction does not provide an independent basis for subject matter jurisdiction. See Miller v. Heckler, 601 F. Supp. 1471, 1488 (E.D. Tex. 1985).

II.    <u>Motion to Dismiss for Improper Venue</u>

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3).  <u>See</u> Fed. R. Civ. P. 12(b)(3).  Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper.  <u>Am. Gen. Life Ins. Co. v. Rasche</u>, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation omitted).  "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  <u>Braspetro Oil Servs. Co. v. Modec (USA), Inc.</u>, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted).  Thus, a plaintiff may show that venue is proper by "setting forth facts that taken as true would establish venue."  <u>Bigham v. Envirocare of Utah, Inc.</u>, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir. 1994)).

If venue is improper,  28 U.S.C. § 1406(a) instructs district courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision to dismiss or transfer lies within the court's discretion.  <u>AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC</u>, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing <u>Dubin v. United States</u>, 380 F.2d 813, 815 (5th Cir. 1967)).

DISCUSSION

I.      Lack of Subject Matter Jurisdiction

   A.      Waiver of Sovereign Immunity Under the Administrative Procedures Act

        The United States and its agencies are immune from suit except when it consents to being sued.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  A waiver of sovereign immunity must be unequivocally expressed.  Id.  The Administrative Procedure Act ("APA"), 5 U.S.C. § 700 et seq, waives sovereign immunity and confers jurisdiction of the federal district court only if there is a "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704; Sackett v. E.P.A., 132 S.Ct. 1367, 1371 (2012).  Thus, if a suit is filed before "final agency action" occurs, this Court does not have jurisdiction to hear it.

   B.      Whether the December 17, 2014 Rejection of the Jensen's Preferred Ship Mortgage Constituted "Final Agency Action"

        The Jensens argue that the Coast Guard's initial rejection of their Preferred Ship Mortgage Application on December 17, 2014, constituted "final agency action" for purposes of the APA.  (Dkt. # 31 at 4.)  The Coast Guard argues that the "final agency action" for APA purposes was not rendered until March 10, 2014—the date the Commandant denied the Jensens' appeal.  (Dkt. # 30 at 1.)  If the "final agency action" occurred on March 10, 2014 (when the Coast Guard

8

denied the Jensens' appeal), the Coast Guard argues this Court does not have jurisdiction to hear the action because under the APA because the "final agency action" to be reviewed must have taken place <u>before</u> the suit is commenced.[1] (<u>Id.</u>)

Thus, the issue before the Court is whether "final agency action" occurred when the Coast Guard initially rejected the Jensens' application (before the Amended Complaint was filed adding the Coast Guard as a Defendant), or when the Coast Guard denied the Jensens' appeal of the initial rejection (after the Amended Complaint was filed adding the Coast Guard as a Defendant).

For an action to be considered "final" for APA purposes, two general conditions must be satisfied: First, the action must be a "consummation" of the agency's decision-making process, not be merely "tentative or interlocutory" in nature.  <u>Bennett v. Spear</u>, 520 U.S. 154, 177–78 (1997).  Second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." <u>Id.</u> at 178.

The Coast Guard argues that Coast Guard regulations refer to decisions of the Commandant as being the Coast Guard's "final agency action." (Dkt. # 30 at 7.)  In support, the Coast Guard cites to 15 C.F.R. § 1.03-15(j), arguing that that section demonstrates that the final agency action occurred when the Commandant denied the Jensens' appeal on March 10, 2014.  (<u>Id.</u>)

---

[1] Again, the Jensens added the Coast Guard as a Defendant with the filing of their Amended Complaint on February 5, 2014.

Section 1.03-15(j) provides: Any decision made by the Commandant …. or by an office chief pursuant to authority delegated by the Commandant is final agency action <u>on the appeal</u>.  15 C.F.R. § 1.03-15(j) (emphasis added). Essentially, the Coast Guard argues that this section provides that the <u>only</u> final agency action is a decision made by the Commandant.  However, the plain language of the section in no way infers that the initial decision that is appealed could not also be a "final agency action" for purposes of the APA.  Rather, the section informs that a decision by the Commandant is final agency action <u>on the appeal</u>.  Thus, this section does not support the Coast Guard's position that the Commandant's decision is the <u>only</u> final agency action for purposes of the APA. On the contrary, subsections (e) and (f) demonstrate that an initial decision or action being appealed could indeed be characterized as final:

> (e) When considering an appeal, the Commandant or a District Commander <u>may</u> stay the effect of a decision or action being appealed pending determination of the appeal.
>
> (f) While a request for reconsideration or review of a formal appeal is pending, <u>the original decision or action remains in effect</u>, unless otherwise stayed under paragraph (e) of this section.

15 C.F.R. §§ 1.03-15(e)–(f) (emphases added).  Therefore, an original decision or action remains in effect pending appeal, unless the Commandant stays the effect of

such decision or action pending determination on appeal.[2]  This principle ties in

with Section 704 of the APA, which discusses the final nature of actions

reviewable:

> Except as otherwise expressly required by statute, agency action
> otherwise final is final for the purposes of this section whether or not
> there has been presented or determined an application for a
> declaratory order, for any form of reconsideration, or, unless the
> agency otherwise requires by rule and provides that the action
> meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (emphases added).  This section "has long been construed by

[courts] merely to relieve parties from the requirement of petitioning for rehearing

before seeking judicial review (unless, of course, specifically required to do so by

statute . . .), but not to prevent petitions for reconsideration that are actually filed

from rendering the orders under reconsideration nonfinal."  Darby v. Cisneros, 509

U.S. 137, 145 (1993) (quoting ICC v. Locomotive Engineers, 482 U.S. 270

(1987)).

It appears that the Coast Guard confuses the distinction between

"finality" for purposes of the APA and the doctrine of administrative exhaustion.

In Darby, the Supreme Court discussed the relationship between the doctrine of

finality and the doctrine of administrative exhaustion:

> [T]he finality requirement is concerned with whether the initial
> decisionmaker has arrived at a definitive position on the issue that

---

[2] Here, neither party has asserted that the Commandant stayed the effect of the
NVDC's decision on the Jensens' application for a Preferred Ship Mortgage.

inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise appropriate.

509 U.S. at 144 (quoting Williamson Cnty. Reg. Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)).  Here, nothing in the Coast Guard regulations require that a party administratively exhaust a decision involving documentation of vessels by appealing that decision to the Commandant prior to seeking judicial review, and the Coast Guard does not assert an argument regarding administrative exhaustion.   Rather, the Coast Guard relies upon language in the Coast Guard regulations that states that a decision made by the Commandant constitutes final agency action on appeal.  However, as stated above, this section does not indicate that only a decision by the Commandant may constitute final agency action.  As the Supreme Court discussed in Darby:

> Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be 'inoperative' pending appeal.  Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review.

509 U.S. at 152.

Here, there is no Coast Guard regulation requiring that the Jensens take an agency appeal prior to judicial review (or administratively exhaust the decision), nor does the APA specifically mandate exhaustion as a prerequisite to

12

judicial review;[3] additionally, although the regulations provide that the

Commandant <u>may</u> stay the effect of the decision pending appeal, there is no

evidence here that the December 17 decision was held inoperative or stayed

pending a decision of the Commandant on the Jensens' appeal.  According to

§ 1.03-15(f), the original decision remains in effect pending appeal if not stayed by

the Commandant pursuant to subsection (e).  <u>See</u> 15 C.F.R. §§ 1.03-15(e)–(f).

    As discussed above, for an action to be considered "final" for APA

purposes, the action must be a "consummation" of the agency's decision-making

process, not be merely "tentative or interlocutory" in nature, and must be one by

which "rights or obligations have been determined," or from which "legal

consequences will flow," <u>Bennett v. Spear</u>, 520 U.S. 154, 177–78 (1997).  Here,

the initial decision of the NVDC was not tentative or interlocutory; rather, it

constituted an action on the Jensens' application, denying their request to file the

Mortgage Agreement as a Preferred Ship Mortgage.  There is no evidence this

decision was stayed by the Commandant pending decision on appeal.

Additionally, the December 17 decision of the NVDC was one in which "rights or

obligations" were determined; namely, that the Mortgage Agreement would not be

---

[3] As stated above, 5 U.S.C. § 704 provides that except as otherwise expressly
required by statute, an agency action is final "whether or not there has been
presented or determined an application" for any form of reconsideration.  <u>See also</u>
<u>Darby v. Cisneros</u>, 509 U.S. 137, 138 (1993) (noting the APA does not specifically
mandate exhaustion as a prerequisite to judicial review).

filed and documented as a Preferred Ship Mortgage.  This decision was one from which "legal consequences" flowed, as the rejection of the filing of their Mortgage Agreement as a Preferred Ship Mortgage deprives this Court of subject matter jurisdiction pursuant to Supplemental Rule B.  Without a Preferred Ship Mortgage, the Jensens no longer hold a "maritime lien," depriving this court of maritime jurisdiction.

In its Reply, the Coast Guard cites Dresser v. Ingolia, 307 F. App'x 834, 840 (5th Cir. 2009), for the proposition that a party's appeal of a decision to the Commandant means that the underlying decision could not be "final agency action."  (Dkt. # 32 at 3.)   However, Dresser is distinguishable.

In Dresser, the applicable Coast Guard regulations provided that "[u]nless appealed . . . an ALJ's decision becomes final action of the Coast Guard 30 days after the day of its issuance."  Id. at 840 (quoting 33 C.F.R. § 20.1101(b)(1)).  Thus, the court noted, that if the ALJ's decision is appealed to the Commandant, the Commandant's decision constitutes final action of the Coast Guard.  Id.  The court then analyzed:

> In the present case, the district court held that there was no final
> agency action by the Coast Guard in Dresser's and Roger's cases
> because their appeals were still pending with the Commandant.  We
> agree with the district court's conclusion that "[t]he regulation is clear
> on its face that an ALJ's decision is 'final' action, unless the decision
> is appealed," and that, on these facts, "Dresser's [and Rogers's]
> claims are barred by the APA's finality requirement."

Id.  Here, on the contrary, the applicable regulations provide that: "[w]hen considering an appeal, the Commandant or a District Commander may stay the effect of a decision or action being appealed pending determination of the appeal," and that "[w]hile a request for reconsideration or review of a formal appeal is pending, the original decision or action remains in effect" unless it is stayed by the Commandant.  15 C.F.R. §§ 1.03-15(e)–(f) (emphases added).  Therefore, unlike the regulations at issue in Dresser, an original decision or action remains in effect pending appeal unless the Commandant stays the effect of such decision or action pending determination on appeal; here, neither party has argued that the Commandant stayed the action pending appeal, and there is no evidence that the action was stayed.

Based on the foregoing discussion, the Court concludes that "final agency action" occurred when the NVDC rejected the Jensens' application on December 17, 2013.  Therefore, the final agency action occurred prior to the filing of the Jensens' Amended Complaint on February 5, 2014, and, thus, this Court has jurisdiction to hear the Jensens' claim for judicial review pursuant to the APA. The Coast Guard's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

15

II.   <u>Proper Venue</u>

   Next, the Coast Guard argues that the Jensens' action against it should be dismissed because venue is improper in the Western District of Texas.  (Dkt. # 30 at 8.)  Specifically, the Coast Guard argues that the Court must look to 28 U.S.C. § 1391(e) in determining whether venue is proper in an action under the APA, which provides that a suit

> . . . in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action."

28 U.S.C. § 1391(e); <u>see</u> <u>Reilly v. United States</u>, 93 Fed. Cl. 643, 653 (Fed. Cl. 2010) (indicating that statute governing the selection of venue for APA actions is 28 U.S.C. § 1391(e)).

   The Coast Guard argues that venue is improper under subsection (3) because the Jensens reside in Colorado.  (Dkt. # 30 at 9.)  Next, the Coast Guard argues that venue is improper under subsection (1) because for purposes of §1391(e)(1), the residence of federal officers is the place where the officers perform their official duties.  (<u>Id.</u>)  The Coast Guard argues that it is not a resident of the Western District of Texas, and cites <u>Rueben H. Donnelley Corp. v. F.T.C.</u>, 580 F.2d 264, 267 (7th Cir. 1978), for the proposition that the presence of an

16

agency regional office does not make that agency a resident of the district for venue purposes.  Finally, the Coast Guard argues that venue is improper under subsection (2) because (1) the events giving rise to the Jensens' claim against the Coast Guard occurred in Coast Guard offices in West Virginia and Washington D.C., and (2) the vessel is located in Panama, thus the property that is the subject of this action is not within this district.  (Id.)

The Jensens respond that venue is proper under § 1391(e)(1) because a substantial part of the property that is the subject of this action is located in the Western District of Texas.  Namely, the Jensens refer to the Borrowers' assets that were attached pursuant to Supplemental Admiralty Rule B.  (See Dkt # 3.)  The Court agrees.

Here, the Jensens have brought this suit pursuant to Rule 9(h) of Federal Rules of Civil Procedure, invoking Supplement Admiralty Rule B in seeking to attach the Borrowers' assets.[4]  (SAC ¶¶ 5–6.)   The Borrowers cannot be found in this district as they are allegedly in the country of Panama.[5]  However,

---

[4] Granted, if the Court determines in a later proceeding that the Coast Guard's rejection of the Jensens' application for Preferred Ship Mortgage was correct, this Court will no longer have jurisdiction because the Jensens, without a Preferred Ship Mortgage rendering this claim a maritime claim under Rule 9(h), will be unable to establish jurisdiction in the Western District of Texas.   The Jensens do not contest this fact.  (SAC ¶ 41.)

[5] Summons and the complaint were served upon Defendant Judy Rollinger in the county of Panama on April 29, 2014.  She did not respond to this suit, and a clerk's

"[i]n cases where the District Court has no basis for personal jurisdiction over a party, jurisdiction can be established 'based on the court's power over property within its territory.'" Allied Maritime, Inc. v. Descatrade SA, 620 F.3d 70, 74 (2d Cir. 2010) (citing Shaffer v. Heitner, 433 U.S. 186, 199 (1977)). "In such cases, the District Court must have jurisdiction over the defendant's property in order to be able to affect the defendant's interests." Id. (citing Shaffer, 433 U.S. at 199 n. 17 ("A judgment quasi in rem affects the interests of particular persons in designated property.")).

In this case, though the Court does not have personal jurisdiction over Defendants, this Court has jurisdiction via the attachment of the Borrowers' assets, which are located in this district.[6] Maritime attachment is a remedy quasi in rem. Descatrade SA, 620 F.3d at 74; see Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 (2d Cir. 2009). In Jaldhi, the court discussed the quasi in rem nature of Rule B attachment proceedings, noting that in such proceedings

> … jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest. Because of the requirement that the defendant not be 'found' within the district where the action is brought, Rule B contemplates that a court will lack in personam jurisdiction over a defendant when

---

default judgment was entered against her on August 4, 2014.  (See Dkt. ## 34, 44.) Defendant Rick Knight has not yet been located or served.

[6] The Coast Guard does not dispute the location of the Borrowers' assets within this district.

> it orders that a writ of attachment be issued.  In such a proceeding, the court's coercive authority is conterminous with the scope of its jurisdiction, and limited to the extent of the defendant's interest in the attached property; that authority does not extend to the exercise of <u>in personam</u> jurisdiction over a Rule B defendant.

585 F.3d at 69 n. 12 (internal citations omitted).   Here, this Court's jurisdiction in the underlying action is established based upon the maritime attachment of the Borrowers' assets and the Court's power over property within its territory.[7]  <u>See Allied</u>, 620 F.3d at 74; (Dkt. # 3.).  Thus, a substantial part of the property that is the subject of this Supplement Rule B maritime action (i.e., the Borrowers' attached assets), is situated in the Western District of Texas.

Because this action is based upon the Court's reach of the Borrowers' property located within this district, the Court agrees with the Jensens that venue is proper under § 1391(e)(2) because a substantial part of the property that is the subject of the action is situated here within the Western District.  Accordingly, the Coast Guard's Motion to Dismiss for Improper Venue is **DENIED**.

---

[7] In fact, because the Borrowers' assets are located here in the Western District of Texas, this may be the only district in which the Jensens could have brought their claim.   Neither the Borrowers nor the vessel can be found within the United States.  Rule 82 of the Federal Rules of Civil Procedure provides: "An admiralty or maritime claim under Rule 9(h) is <u>not</u> a civil action for purposes of 28 U.S.C. §§ 1391-1392." <u>Id.</u> (emphasis added).  Instead, "the proper interpretation of Rule 82 is that for claims in admiralty, venue lies wherever a district court has jurisdiction over the defendant." <u>Richoux v. R & G Shrimp Co.,</u> 126 F. Supp. 2d 1007, 1009 (S.D. Tex. 2000).  As stated above, this Court does not have personal jurisdiction over the Borrowers, but has <u>quasi in rem</u> jurisdiction over the Borrowers' property located within this district.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** the Coast Guard's

Motion to Dismiss.

IT IS SO ORDERED.

DATED:  San Antonio, Texas, August 12, 2014.

_____

David Alan Ezra
Senior United States Distict Judge