UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PREBEN V. JENSEN and MARY J. JENSEN, | § | No. SA:13-CV-1095-DAE |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| JUDY ROLLINGER and RICK KNIGHT, UNITED STATES COAST GUARD, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING MOTION TO VACATE WRITS OF ATTACHMENT

On September 10, 2014, the Court heard argument on the Motion to Vacate Writs of Attachment ("Motion to Vacate," Dkt. # 12) filed by Defendants Judy Rollinger and Rick Knight ("Defendants"). Phillip Christian Snyder, Esq., appeared on behalf of Defendants and Todd Lochner, Esq., appeared on behalf of Plaintiffs. Michael W. Kerns, Esq., also appeared on behalf of Defendant United States Coast Guard. After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments presented at the hearing, the Court, for the reasons that follow, **DENIES** Defendants' Motion.

BACKGROUND

Supplemental Admiralty Rule B provides that:

> With respect to any admiralty or maritime claim in personam a
> verified complaint may contain a prayer for process to attach the
> defendant's goods . . . if the defendant shall not be found within the
> district.

Fed. R. Civ. P. Supp. R. B(1)(a).  Thus, Rule B "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant," if the defendant is not found within the district. ProShipLine, Inc. v. M/V Beluga Revolution, No. H-07-4170, 2008 WL 447707, at *2 (S.D. Tex. Feb. 19, 2008) (citing Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 421 (5th Cir. 2001)); see Sembawang Shipyard, Ltd. v. Charger, Inc., 955 F.2d 983, 987 (5th Cir. 1992) ("Rule B is an adjunct to a claim in personam.  When the defendant cannot be 'found within the district,' the plaintiff may 'attach the defendant's goods and chattles.'").  In such cases, "the plaintiff's claim is against the person, not the thing, but if the person cannot be found in the district, the plaintiff is protected by the ability to proceed against the thing."  Sembawang, 995 F.2d at 987.

In the December 10, 2013 Order Granting Request for Issue of Writ of Maritime Attachment, this Court, determining that the conditions of Rule B appear to exist, authorized process of attachment and garnishment, and ordered the Clerk of the Court to immediately issue a process of Maritime Attachment and Garnishment for Defendant's tangible or intangible property as described in the

2

complaint up to the amount sued upon in the verified complaint—$96,000.  (Dkt. # 3.)

Garnishees Edward D. Jones & Co., L.P., and Bank of America, N.A., both filed answers to the writs of garnishment.  (Dkt. ## 5, 6.)   Garnishee Edward D. Jones & Co., L.P., responded that it is in the possession of four accounts: (1) a Single Brokerage Account held for the benefit of Judy Rollinger, with a total account value of $11,081.13, all in cash; (2) a Traditional Individual Retirement Account (IRA) held for the benefit of Judy Rollinger, with an estimated market value of $54,584.49 comprised of shares of two mutual funds and $270.89 in cash; (3) a Traditional Individual Retirement Account (IRA) held for the benefit of Judy Rollinger, with an estimated market value of $369,793.59 comprised of shares of one mutual fund, shares of two unit trusts, and $6,238.13 in cash; and (4) a Roth Individual Retirement Account (IRA) held for the benefit of Judy Rollinger, with an estimated market value of $12,590.47 comprised of shares of three mutual funds and #$308.13 in cash.  (Dkt. # 5.)  Following a reasonable search, Garnishee Edward D. Jones & Co., L.P., did not locate any accounts for Rick Knight.  (Id.)

Garnishee Bank of America, N.A., responded that it is in possession of safe deposit boxes belonging to Judy Rollinger and it is "aware that Bank of America, N.A.," is indebted to Rick Knight, but is not aware of any other entity possessing effects belonging to Rick Knight.  (Dkt. # 6.)

Defendants have now filed the instant Motion to Vacate Writs of Attachment (Dkt. # 12).  Pursuant to Supplement Rule E of the Federal Rules of Civil Procedure:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f).

In their Motion, Defendants argue that the writs must be vacated because (1) Plaintiffs have no prima facie admiralty claim against the Defendants and (2) Chapter 42 of the Texas Property Code bars the Plaintiffs' garnishment of certain accounts.  (Id. ¶ 2.2.)  Therefore, Defendants request that this Court vacate the writs of attachment and garnishment of Defendants' accounts.  (Id. at 11.)

## ANALYSIS

A.    Valid Prima Facie Admiralty Claim

The plaintiff bears the burden of establishing a right to attachment. Icon Amazing L.L.C. v. Amazing Shipping, Ltd., 951 F. Supp. 2d 909 at 915 (S.D. Tex. 2013).  To meet this burden, the plaintiff must show: (1) a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found in the district; (3) the defendant's property is within the district; and (4) there is no legal bar to attachment—either statutory or maritime in nature.  Id.

Here, Defendants argue that Plaintiffs have not established a valid prima facie admiralty claim and, thus, the writs of attachment must be vacated. Specifically, Defendants argue that the document memorializing the sale of the vessel is not a preferred ship mortgage, and therefore Plaintiffs have not stated a valid prima facie admiralty claim against Defendants.

Prior to the enactment of the Ship Mortgage Act of 1920 ("SMA"), a ship mortgage was not considered a maritime contract and, therefore, did not fall within the purview of a federal court's admiralty jurisdiction.  See The Thomas Barlum, 293 U.S. 21, 32 (1934).  As such, "mortgage security on ships was practically worthless."  Id. at 39 (internal quotation marks and citations omitted).  "The Ship Mortgage Act was intended to remedy this problem."  Governor and Co. of Bank of Scotland v. Sabay, 211 F.3d 261, 270 (5th Cir. 2000).  In sum, the SMA expanded the admiralty jurisdiction of the federal courts, but only with respect to "preferred mortgages." See The Thomas Barlum, 293 U.S. at 33 ("The grant is thus one of exclusive jurisdiction to enforce the lien of a 'preferred mortgage.' If the mortgage is a preferred mortgage within the definition of the [SMA], jurisdiction is granted; otherwise not."); McCorkle v. First Penn. Banking & Trust Co., 459 F.2d 243, 248 (4th Cir.1972) ("Thus, notwithstanding the 1920 extension of admiralty jurisdiction to preferred maritime mortgages, courts continue to recognize the vitality of the pre-1920 rule with respect to non-preferred ship mortgages."); R.C.

5

Craig Ltd. v. Ships of the Sea Inc., 401 F. Supp. 1051, 1056 (S.D. Ga.1975) ("A common-law mortgage on a vessel confers no right of cases to the admiralty courts of the United States. Such an instrument does not constitute a maritime contract . . . . The only mortgage on a ship which may invoke the admiralty jurisdiction . . . is one executed in accordance with the [SMA].").

In order for a mortgage on a ship to qualify as a "preferred mortgage" under the Commercial Instruments and Maritime Lien Act ("CIMLA"), it must meet several statutory requirements.  See 46 U.S.C. §§ 31301, 31322.  Specifically, the mortgage must, among other things, be filed in substantial compliance with 46 U.S.C. § 31321, which provides, in relevant part, as follows:

> (a)(1) A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary of Transportation to be valid . . .
>
> . . . .
>
> (b) To be filed, a bill of sale, conveyance, mortgage, assignment, or related instrument must –
>
> (1) identify the vessel;
>
> (2) state the name and address of each party to the instrument;
>
> (3) state, if a mortgage, the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees;

(4) state the interest of the grantor, mortgagor, or assignor in the vessel;

(5) state the interest sold, conveyed, mortgaged, or assigned; and

(6) be signed and acknowledged.

46 U.S.C. § 31321(a)(1).

Rule E(4)(f) provides the procedures for release from arrest or attachment.  Fed. R. Civ. P. Supp. R. E(4)(f).  On motions to vacate writs of attachment or arrest, courts within the Fifth Circuit have maintained that "[a] Rule E(4)(f) hearing, . . . is not intended to definitively resolve the dispute between the parties; instead, the district court makes  a preliminary determination of whether reasonable grounds exist for the arrest."  Austral Asia Pte., Ltd. v. SE Shipping Lines Pte. Ltd., No. 12-1600, 2012 WL 2567149, at *2 (E.D. La. July 2, 2012) (citing Naftomar Shipping & Trading Co., Ltd. v. KMA Int'l S.A., No. V-11-2, 2011 WL 888951 (S.D Tex. Mar. 10, 2011)); see also Vinmar Intern. Ltd. v. M/T Clipper MAKISHIO, No. H-09-3829, 2009 WL 6567104, at *1 (S.D. Tex. Dec. 9, 2009) ("Although [Plaintiff] bears the burden of showing why the arrest should not be vacated, the procedure 'is not intended to resolve definitely the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant.'" (quoting Salazar v. Atlantic Sun, 881 F.2d 73 (3d Cir. 1989))).  Thus, in Rule E(4)(f) hearings, courts do not

make binding determinations of fact, but rather are "merely holding that it is <u>likely</u> that alleged facts are true." <u>Naftomar</u>, 2011 WL 888951, at *3 (quoting <u>Walijam Exports Pte. Ltd. v. ATL Shipping Ltd.</u>, 475 F. Supp. 2d 275 (S.D. N.Y. 2006)).

In their Motion to Vacate, Defendants make several arguments for why Plaintiff's document for sale of the vessel does not meet the requirements of a preferred ship mortgage, thus defeating Plaintiffs' prima facie case in admiralty against Defendants in this Court.  However, given the foregoing standards, the Court declines to address whether Plaintiff's promissory note for sale of the vessel, in fact, meets the standards for a preferred ship mortgage.[1]

As discussed at length in the Court's Order Denying the Coast Guard's Motion to Dismiss (Dkt. # 45), Plaintiffs have amended their complaint, adding the United States Coast Guard as a Defendant and asserting a claim for judicial review pursuant to the Administrative Procedures Act ("APA").   The

---

[1] At the hearing, Plaintiff called Mr. Thomas Willis, the former director of the Coast Guard's National Vessel Documentation Center.  Mr. Willis was called as an expert on whether Plaintiffs' Preferred Ship Mortgage Application substantially complied with the Coast Guard requirements for filing in the event the Court wanted testimony on whether the document filed by Plaintiffs was, in fact, a Preferred Ship Mortgage.  However, because Rule E(4)(f) hearings are not for purposes of "mak[ing] binding determinations of fact," but rather are for "merely holding that it is <u>likely</u> that alleged facts are true," <u>Naftomar</u>, 2011 WL 888951, at *3, the Court will not decide today whether the document filed by Plaintiffs was, in fact, a Preferred Ship Mortgage.  <u>See</u> <u>Vinmar</u>, 2009 WL 6567104, at *1 ("[The Rule E] procedure 'is not intended to resolve definitely the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the [attachment writ].'").

Court has concluded that this Court has jurisdiction to hear Plaintiffs' claim; thus, the Court will at some future point in this case review the Coast Guard's determination as to whether Plaintiffs' mortgage agreement meets the requirements for filing as a preferred ship mortgage.  If the Coast Guard's determination that the document does not meet the requirements for filing as a preferred ship mortgage is correct, then Plaintiffs do not have a preferred ship mortgage and admiralty jurisdiction will therefore be defeated.

In the instant Motion, Defendants essentially ask that this Court decide whether Plaintiffs indeed have a preferred ship mortgage, as that relates to their prima facie case for a claim in admiralty.  Keeping the aforementioned standards in mind, however, the Court declines to "to resolve definitely the dispute between the parties," but, at this stage of the proceedings, will only "make a preliminary determination whether there were reasonable grounds for issuing" the writs of garnishment.  See Vinmar, 2009 WL 6567104, at *1.

Therefore, at this juncture, the Court concludes that Plaintiffs have alleged a prima facie case in admiralty against Defendants, and the Court **DENIES** Defendants' Motion to Vacate on that basis.

II.    Chapter 42 as a Bar to Attachment

Next, Defendants argue that even assuming Plaintiffs have stated a valid prima facie case in admiralty, the writs of attachment must be vacated

9

pursuant to Chapter 42 of the Texas Property Code.   (Dkt. # 12 ¶ 2.13.)

Specifically, Defendants argue that Chapter 42 bars the garnishment of Rollinger's

retirement accounts held by Edward D. Jones & Co., L.P.  (Id.)

> Section 42.0021(a) provides:
>
> [A] person's right to the assets held in or to receive payments,
> whether vested or not, under any stock bonus, pension, annuity,
> deferred compensation, profit-sharing, or similar plan, including a
> retirement plan for self-employed individuals, or a simplified
> employee pension plan, <u>an individual retirement account</u> or individual
> retirement annuity, including an inherited individual retirement
> account, individual retirement annuity, Roth IRA, or inherited Roth
> IRA . . . <u>is exempt from attachment, execution, and seizure for the</u>
> <u>satisfaction of debts</u> to the extent the plan, contract, annuity, or
> account is exempt from federal income tax, or to the extent federal
> income tax on the person's interest is deferred until actual payment of
> benefits to the person . . . .

Tex. Prop. Code § 42.0021(a) (emphases added).

Defendants argue that pursuant to § 42.0021(a), the retirement

accounts held by Rollinger "are all specifically exempt from attachment,

execution, and seizure for the satisfaction of any debts, including those alleged by

Plaintiffs."  (Dkt. # 12 ¶ 2.14.)  In response, Plaintiffs point out that Defendants

fail to cite any authority that state law exemptions such are Chapter 42 are

applicable to Rule B maritime attachments.

First, Defendants cite an unpublished bankruptcy case in support of

the proposition that federal courts apply the Texas Property Code Chapter 42

exemption to bar the garnishment of retirement accounts for the purpose of

satisfying debts.  (See Dkt # 12 ¶ 2.13 (citing In re Friedheim, No.

3:07-CV-0181-G, 2007 WL 2325613 (N.D. Tex. Aug. 14, 2007)).  However,

unlike Supplemental Rule B, the bankruptcy statutes specifically provide that a

debtor may claim as exempt any property that is exempt under federal, state, or

local law.  11 U.S.C. § 522(b).  In In re Friedheim, the court cited 11 U.S.C.

§ 522(b) in concluding that the Bankruptcy Code specifically authorizes a debtor to

rely on state law exemptions such as Chapter 42.  Id. at *2.  Defendants have not

cited to any similar statute applying state law exemptions to Supplemental Rule B

attachments and the Court has found none.

      Defendants also cite Janvey v. Alguire, 647 F.3d 585 (5th Cir. 2011),

for the proposition that federal courts apply the Chapter 42 exemption of

retirement accounts.  However, this case is also distinguishable.  In Janvey, the

SEC brought suit against an investment company and related entities for allegedly

perpetrating a massive Ponzi scheme.  Before the court was an appeal of a motion

for preliminary injunction that was granted in favor of the court-appointed receiver

for the investment company, freezing accounts (including retirement accounts) of

the individual defendants pending outcome of the trial.  The defendants appealed,

arguing that any frozen IRA account is exempt from the receiver's claim.  Id. at

601.  The Fifth Circuit held that despite Chapter 42, the district court did not err in

keeping the IRA accounts frozen under the preliminary injunction because the

defendants did not meet their burden of establishing that they had a legal right to the funds in the IRA to be entitled to the exemption.  Id.  Thus, this case does not support Defendants' argument that Chapter 42 always acts as a bar to attachment of any IRA account; and, in any event, while Janvey discussed Chapter 42 in the context of a preliminary injunction and what accounts could be frozen pending trial, again, this does not support Defendants' proposition that Chapter 42 applies in the maritime Supplemental Rule B attachment context.

Moreover, the Second Circuit's opinion in Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996),[2] supports the Plaintiffs' argument that Chapter 42 may not apply in the Rule B maritime attachment context.  In Aurora, the appellate court affirmed the district court's holding that, as a matter of statutory construction, a state statute regarding lien priority did not apply to a federal attachment under Rule B.  Id. at 46.  In so concluding, the district court had acknowledged that no federal court had decided the issue, but concluded that because the plaintiff obtained Rule B attachments before the defendant exercised its set-off rights under the state statute, the plaintiff

[2] Courts within the Fifth Circuit have noted the long history of maritime attachments in the Second Circuit.  Eitzen Bulk A/S v. Capex Indus., Ltd., CIV.A. 10-395, 2010 WL 5141257 (E.D. La. Dec. 13, 2010) ("This Court notes the long history of maritime attachments in the Second Circuit . . .").

gained a limited property interest under federal law that could not be defeated by a subsequently executed state law set-off right.  Id.

At issue in Aurora was Section 151 of the New York Debtors and Creditors Law, which permitted debtors "to set off and apply against any indebtedness, whether matured or unmatured, of [a] creditor to [the] debtor, any amount owing from such debtor to such creditor, at or at any time after [the issuance of the warrant of attachment]." Aurora, 85 F.3d at 46 (citing N.Y. Debt. & Cred. Law § 151).  The defendant-bank filed a motion to vacate attachment, asserting that its state law set-off right pursuant § 151 should vacate the Rule B attachment.  After the district court denied the bank's motion to vacate Rule B attachments, the court sua sponte certified its order for immediate interlocutory appeal.

Although the appellate court did not agree with the district court's first-in-time conclusion that set-off rights under § 151 and the plaintiff's Rule B attachments did not conflict, the court nonetheless affirmed, concluding that § 151 was, in fact, preempted by Rule B.  The Aurora court decided the preemption issue based on the Supreme Court's holding in American Dredging Co. v. Miller, 510 U.S. 443 (1994).

In American Dredging, the Supreme Court held that the prohibition against a state attempting to make changes in substantive maritime law is violated

when a state remedy works material prejudice to the characteristic features of

general maritime law or interferes with proper harmony and uniformity of that law

in its international and interstate relations.  Id. at 447.  The issue in American

Dredging was whether the doctrine of forum non conveniens is either a

"characteristic feature" of admiralty or a doctrine whose uniform application is

necessary to maintain the "proper harmony" of maritime law.  Id.  Ultimately, the

Court concluded that the doctrine of forum non conveniens was neither.  However,

the Court noted that "forum non conveniens does not bear upon the substantive

right to recover, and is not a rule upon which maritime actors rely in making

decisions about primary conduct."  Id. at 454.

       The Aurora court held that maritime attachment is a "characteristic

feature of the general maritime" law within the meaning of American Dredging.

Aurora, 85 F.3d at 48.  The court also held that § 151 materially interferes with

important purposes, and reduces the effectiveness, of maritime law.  Id.  The court

noted that the rationale underlying maritime attachment is twofold: First,

attachment provides a means to assure satisfaction if a suit is successful.  Second,

an additional purpose of maritime attachment is to insure a defendant's appearance

in the action.  Id. at 48; see also Swift & Co. Packers v. Compania Colombiana Del

Caribe, S.A., 339 U.S. 684, 693, 70 S. Ct. 861, 867, 94 L. Ed. 1206 (1950) ("The

process of foreign attachment is known of old in admiralty.  It has two purposes: to

secure a respondent's appearance and to assure satisfaction in case the suit is successful.").

With these two purposes of maritime attachment in mind, the <u>Aurora</u> court held that § 151 "threatens to undermine the power of federal admiralty courts sitting in New York to enforce substantive admiralty law" because, "[i]n effect, an admiralty defendant with a New York bank account may enjoy the beneficial use of its account by borrowing from the bank without fear of the account serving as a vehicle for enforcement of maritime rights against it." <u>Id.</u>  Finally, the court noted that "given the importance of maritime attachment in light of the reasons discussed above, leaving the functional usefulness of Rule B attachments to the vagaries of the laws of fifty states would create a measure of anarchy in a federal scheme designed to insure that maritime actors may be sued where their property is found." <u>Id.</u> at 49.  Because "[s]uch anarchy would be inconsistent with an ancient purpose of admiralty law in providing convenient fora for those who want to enforce rights under maritime law against hard-to-catch defendants," and would also "be detrimental to international commerce," the court ultimately concluded that the state law set-off rights under § 151 were preempted by Rule B attachments.  <u>Id.</u>

Here, while it is unlikely that Chapter 42 prohibiting the garnishment of retirement accounts would have such sweeping ramifications as § 151 in the

maritime context,[3] the court's holding in <u>Aurora</u> is instructive in the instant case.
Without the attachment of the accounts owned by Defendants here in the Western
District of Texas, this Court lacks jurisdiction to hear Plaintiffs' claim.  Plaintiffs
are in a unique situation in that these accounts are the only property they have
located belonging to Defendants who, meanwhile, have apparently set off to
Panama on the very vessel that Plaintiffs sold them and seek to recover money
owed to them per the terms of the agreement for sale of the vessel.  Without
attachment, this Court lacks quasi in rem jurisdiction, and Plaintiffs are without the
ability to pursue their claim against Defendants who are conveniently somewhere
in South America and unable to be located.[4]  Considering the purposes of maritime
attachment as a means to assure satisfaction if a suit is successful and to insure a
defendant's appearance in the action, <u>Aurora</u>, 85 F.3d at 48, the Court could
envision a scenario when Chapter 42 may "threaten[] to undermine the power of
federal admiralty courts sitting in [Texas] to enforce substantive admiralty law" as
did § 151 in <u>Aurora</u>.

---

[3] Due to the somewhat complex facts of this case, and the apparent lack of
authority on the attachment of retirement accounts, the Court does not envision
many cases where, as here, the maritime attachment of a defendant's retirement
accounts is at issue.

[4] Rollinger was in fact located in Panama and served.  She did not answer, and a
clerk's default judgment has been entered against her.  (Dkt. # 44.)  Knight, to
date, has not been located.

In <u>LaBanca v. Ostermuncher</u>, 664 F.2d 65 (5th Cir. 1981), the Fifth Circuit reversed the district court's grant of a motion to quash service of maritime attachment and garnishment.  In reversing, the court held that defendants could not be "found within the district" where defendants, who were citizens of Venezuela, had no representative in the Middle District of Florida, even though they could have been served with process in the Northern District.  <u>Id.</u>  The court noted that

> [t]he facts of this case are exactly the situation for which the process of maritime attachment was originally created.  Maritime attachment has two purposes: First, to secure a defendant's appearance; second, to assure satisfaction in case the plaintiff is successful.  Without a maritime attachment, Mr. LaBanca would have little hope of securing the appearance of, or satisfying a judgment against, Venezuela citizens.

<u>Id.</u> at 68 n.4.  Similarly, although Defendants here are citizens of the United States, without maritime attachment, Plaintiffs would have little hope of securing their appearance or satisfying a judgment against them.  Despite searching, Plaintiffs have been unable to find any other property belonging to them here in the Western District of Texas.

With regard to the application of state law in the maritime context, "[w]hether a state law may provide a rule of decision in an admiralty case depends on whether the state rule 'conflicts' with the substantive principles of federal admiralty law."  <u>Calhoun v. Yamaha Motor Corp., U.S.A.</u>, 40 F.3d 622, 627 (3d Cir. 1994) <u>aff'd,</u> 516 U.S. 199 (1996).  "[S]tate law may supplement maritime law

when maritime law is silent or where a local matter is at issue, but state law may

not be applied where it would conflict with [federal] maritime law." Id. Similarly,

in the Fifth Circuit, the Court maintains that

> Although state law may occasionally be utilized to fill the gaps in an
> incomplete and less than perfect maritime system it cannot be
> employed to contravene an act of Congress, to prejudice the
> characteristic features of the maritime law or to disrupt the harmony it
> strives to bring to international and interstate relations.

J. Ray McDermott & Co. v. Vessel Morning Star, 457 F.2d 815 (5th Cir. 1972).

Here, the application of Chapter 42, in this particular instance,

conflicts with federal maritime law.  First, as noted above, there is no statute such

as the statute in the Bankruptcy Code that specifically provides that a debtor may

claim as exempt any property that is exempt under federal, state, or local law.  11

U.S.C. § 522(b).  On the contrary, Supplemental Rule B vaguely provides that  "a

verified complaint may contain a prayer for process to attach the defendant's

tangible or intangible personal property—up to the amount sued for—in the hands

of garnishees named in the process."  Fed. R. Civ. P. Supp. R. B (emphasis added).

Supplement Rule B does not specify the types of property that may be attached or

exclude certain types of tangible or intangible property.  Further, also as discussed

above, considering the purposes of maritime attachment and the principle of

admiralty law "in providing convenient fora for those who want to enforce rights

under maritime law against hard-to-catch defendants," Aurora at 85 F.3d at 49;

<u>Vitol, S.A. v. Primerose Shipping Co.</u>, 708 F.3d 527, 539 (4th Cir. 2013) (the use of Supplemental Rule B purpose is "to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment"), the Court concludes that Chapter 42 should not, in this circumstance, render the attachments vacated.

        Plaintiffs also argue that even assuming § 42.0021, a state law, takes precedent over Rule B, federal law, "[a] party claiming an exemption under section 42.001 bears the burden of proving that he or she is entitled to it."   (Dkt. # 14 at 16 (citing <u>Jones v. Am. Airlines, Inc.</u>, 131 S.W.3d 261, 270 (Tex. App. 2004).)   Thus, Plaintiffs argue, Defendants have not met their burden of proving that the funds in the IRAs are exempt under § 42.0021.  (<u>Id.</u>)

        Indeed, the party claiming the exemption must establish that she has a legal right to the funds in the IRA to be entitled to the exemption.  <u>Jones</u>, 131 S.W.3d at 270.  "Because '[a]n exemption is a right given by law to a debtor to retain a portion of his [or her] property free from the claims of creditors,' we hold that Appellant cannot claim as exempt the portion of benefits to which she has no legal right."  <u>Id.</u> (quoting <u>Pickens v. Pickens</u>, 83 S.W.2d 951, 954 (Tex. 1935)).

        As Plaintiffs point out, Defendants have only alleged in their Motion to Vacate that the funds in the IRA accounts were "earned by Rollinger" and that

her contribution did not exceed "the amounts deductible under the applicable provisions of the Internal Revenue Code."  (Dkt. # 12 ¶ 2.14.)  Defendants, in their Reply (Dkt. # 17), did not even address Plaintiffs' arguments that Defendants have failed to meet their burden of proving exemption—in fact, Defendants did not discuss Chapter 42 whatsoever in their Reply.

Considering that "[a] party claiming an exemption under section 42.0021 bears the burden of proving that he or she is entitled to it," the Court concludes that these bare allegations do not meet the burden.  Accordingly, even if Chapter 42 were to apply in the maritime attachment context, Defendants have not established their right to the exemptions provided under Chapter 42.  Thus, the Court **DENIES** Defendants' Motion to Vacate on this basis.

<u>CONCLUSION</u>

Based on the foregoing, the Court **DENIES** Defendants' Motion to Vacate Writs of Attachment.  (Dkt. # 12.)

IT IS SO ORDERED.

DATED:  San Antonio, Texas, September 11, 2014.

_____

David Alan Ezra
Senior United States District Judge